UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL GLENN DOWNING,

                    Plaintiff,                    Case No. 1:11-cv-372

v.                                             Honorable Janet T. Neff

UNKNOWN GREER et al.,

                    Defendants.

_____/

**<u>OPINION</u>**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Proehl and the unknown Newaygo County Administrator. The Court also will dismiss certain of Plaintiff's claims against Defendants Greer and Mercer and will order service of the remaining claims against Defendants Greer and Mercer.

**Discussion**

I.      Factual allegations

Plaintiff Michael Glenn Downing currently is incarcerated at the Newaygo County Jail.  He sues the following Newaygo County employees:  Sheriff Michael S. Mercer, Lieutenant (unknown) Greer, Physician Assistant Rob Proehl, and the unknown County Administrator.

Plaintiff purports to raise claims under the First, Eighth, and Fourteenth Amendments.  He alleges that, on April 6, 2011, he gave a form civil rights complaint to Officer Brian Nestle to pass to Defendant Greer for copying.  Plaintiff did not receive his copies for an unspecified period of time.  On May 2, 2011, Plaintiff attempted to speak with a corporal or sergeant, as he needed copies of papers related to an appeal in another case, *Downing v. Corr. Med. Servs., Inc.*, No. 1:06-cv-232 (W.D. Mich.).  Plaintiff spoke first to Officer April Crosby and then to a rookie officer.  He was told that the corporal had been notified.  Plaintiff complains that he saw Corporal Denny in the pod earlier, but Denny had not taken care of the matter.  At approximately 3:00 p.m., Corporal Denny, Officer Glenna Gallon, and Defendant Greer came to talk to Plaintiff.  Plaintiff got into a heated argument and asked for a grievance form.  Plaintiff asserts that he intended to file a grievance about the failure to return the April 6, 2011 form complaint and the failure to make copies for the appeal.  Defendant Greer refused to give Plaintiff a grievance form because he had filed too many grievances already.  Greer also informed Plaintiff that his prior case had been dismissed as frivolous, though the action apparently was dismissed for lack of exhaustion.  Plaintiff continued to argue with Greer and told Greer that Plaintiff intended to sue him.  Greer asked if Plaintiff intended to threaten him.  Plaintiff stated, "[N]o, it's what I'm going to do."  (Am. Compl., docket #8, Page ID#28.)  Greer then asked Plaintiff when he expected to get out of jail.  Plaintiff told

- 2 -

him September 8.  Greer responded, "[L]ooks like it's going to be a long stay."  Plaintiff took Greer's comment as a threat of harassment or retaliation.

Plaintiff alleges that he complained to Greer that he was experiencing substantial back pain from being forced to sleep in a "boat" on the floor.  Being on the floor caused Plaintiff difficulty getting up and down.  Plaintiff's girlfriend called the jail repeatedly, and Greer told her that there were bunks available if Plaintiff wanted them.  However, all available bunks were upper bunks, and Plaintiff could not climb into an upper bunk because of a herniated disk in his back, which had required surgery.  In fact, the disk was injured when Plaintiff was getting off a top bunk.  Plaintiff was finally given a lower bunk, but Greer promptly moved Plaintiff to C-floor, where he was again assigned to a boat.

Shortly after Plaintiff's conversation with Greer, Plaintiff received his mail, which contained the judgment in Case No. 1:06-cv-232.  The mail from the court had been opened outside Plaintiff's presence.  In addition, Plaintiff complains that he mailed a letter to this Court on April 12 or 13, 2011, which was never received and which Plaintiff believes was intercepted by Defendant Greer.  He sent a second request.  On May 6, 2011, Plaintiff received mail from this Court, which also was opened outside Plaintiff's presence.  Plaintiff filed a grievance.  On May 7, 2011, Sergeant Clyde came to Plaintiff's cell to explain that jail policy considered legal mail to consist of only correspondence between a prisoner and an attorney.  Plaintiff submitted a grievance to Officer Nestle, who gave it to Corporal Denny.  Denny told Plaintiff that he would place it in Sergeant Clyde's mailbox.  Plaintiff alleges that, in retaliation for the filing of the grievance, unnamed persons returned to Plaintiff's mother letters that she had mailed to Plaintiff.

- 3 -

Plaintiff also complains about a general practice of denying dental treatment and medication.  Plaintiff alleges:

> Myself and all inmates are completely denied any treatment by a dentist unless we have a minimum of three hundred dollars in our account.  I have teeth that hurt and nowhere to turn.  I have seen many inmates who have had numerous and very serious toothaches, very swollen faces, and yet they are denied even a referral by Rob Proehl and flat out refuses to distribute any medication for pain.  I've had to help a couple of these inmates myself with my own ibuprofen that I need.  It would only help temporarily.  I couldn't stand seeing them in this type of pain.  I have numerous statements from inmates who tell of their torture in short with more to come.

(*Id.*, Page ID#32.)  Plaintiff asserts that the Sheriff and the unknown Newaygo County Administrator are responsible for having a dentist on contract to provide dental services.  Plaintiff also alleges that he and other prisoners have chronic pain conditions.  Proehl, however, allegedly refuses to provide any pain medication, telling prisoners to purchase pain medication at the commissary.  Plaintiff alleges that the pain relievers that are available at the commissary are sold in two-pill packets, making them exorbitantly expensive.  Further, Plaintiff alleges that many prisoners have chronic constipation caused by the starchy diet, yet the prison fails to create a more high-fiber diet.

Plaintiff next alleges that he has on many prior occasions requested permission to use the law library, but has only occasionally been allowed to do so.  Plaintiff also complains that the computer rarely works or is very slow.  He contends that, while the legal materials are difficult to understand, he would like to try to understand them, and he has found some helpful things on the few occasions he has been allowed to go to the library.  Because of the constant excuses made by officers, Plaintiff has given up trying to access the library.  Plaintiff alleges that Defendants Mercer and Greer are responsible to ensure that the system works.

In addition, Plaintiff complains that the jail complaint system is very poor.   He further contends that when he and other prisoners raise legitimate, grievable issues, they are met by

- 4 -

resistance and hostility.  He asserts that they sometimes are threatened with being moved, possibly to C-Floor, which is where the worst prisoners are kept.  Plaintiff has heard unidentified officers comment on the practice many times.

Plaintiff also alleges that race is used as a form a punishment.  He states that, after he complained about being in a boat rather than a bottom bunk, Greer placed him in a cell with three black men, where he was again assigned to a boat.  Plaintiff alleges that Officer Adam asked him, "I hope you[']re not racist?"  (*Id.*, Page ID#34.)

Plaintiff claims that he was under significant stress and on psychotropic medications to help him deal with his back pain. The following day he was moved to another cell, where he still was in a boat on the floor.  He was in a great deal of pain from his back and he twisted his knee getting out of the boat.

On November 2, 2010, Plaintiff began to hemorrhage internally.  He was taken to the hospital and placed in intensive care while he received blood transfusions.  Plaintiff believes that the stress of dealing with Defendant Greer caused the bleed, though he acknowledges that no cause for the bleed was ever determined by medical providers.

Finally, Plaintiff complains that he was not provided with an inmate handbook until he had been in the jail for almost a year.  He contends that the handbook is kept on the computer and is not generally accessible to the inmates.  As a result, officers are able to impose arbitrary rules.

For relief, Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

- 6 -

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Access to the Courts

Plaintiff raises three claims that arguably implicate his right to access the courts.

First, he contends that Defendant Greer improperly refused to make copies of a civil rights

complaint and papers related to an appeal.  Second, he alleges that Greer improperly refused to

provide him with a grievance form.  Third, he contends that various officers have denied him access

to the library on numerous occasions.

It is clearly established that prisoners have a constitutionally protected right of access

to the courts under the First and Fourteenth Amendments.  *See  Lewis v. Casey*, 518 U.S. 343, 354

(1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland*

*v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide

affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in

particular criminal and habeas corpus cases, as well as other civil rights actions relating to the

prisoner's incarceration.  *Id.* (*citing Bounds*, 430 U.S. at 824-28).  Second, the right of access to the

courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility

to the courts.  *Id.* (*citing Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)).

In order to state a viable claim for interference with his access to the courts, a plaintiff

must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis*

*v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886

(6th Cir. 1999); *Knop*, 977 F.2d at 1000.   The Supreme Court has strictly limited the types of cases

for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391

(6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous

claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis*

changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . .

is an element that must be described in the complaint, just as much as allegations must describe the

official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing

*Lewis*, 518 U.S. 353 & n.3).  The *Christopher* Court held that, "[l]ike any other element of an access

claim, the underlying cause of action and its lost remedy must be addressed by allegations in the

complaint sufficient to give fair notice to a defendant."  *Christopher*, 536 U.S. at 416.

In his first claim, Plaintiff alleges that Greer refused to make copies of both a civil

rights complaint that Plaintiff intended to file and of unspecified papers that Plaintiff wanted to use

for his appeal of a dismissed federal action.  Plaintiff, however, fails entirely to allege the nature of

the underlying complaint that Greer refused to copy, whether such claim was a non-frivolous civil

rights action, or whether he actually was prevented from pursuing his civil rights action.  His

allegations therefore fall far short of alleging facts that would be sufficient under *Christopher*, 536 U.S. at 416, and *Lewis*, 518 U.S. at 353.  Similarly, Plaintiff makes no allegation that Greer's refusal on a particular occasion to make copies of documents that Plaintiff wanted to use in his appeal in any way impaired his ability to file that appeal or that his claim on appeal was non-frivolous.  As a consequence, Plaintiff's allegations related to Greer's refusal to make copies fails to state an access-to-the-courts claim.

Plaintiff next alleges that, because "[a] grievance is a prerequisite to a suit," (*see* Am. Compl., Page ID#28), Defendant Greer interfered with Plaintiff's right of access to the courts by denying him a grievance form.  However, Plaintiff fails to allege that he was actually injured by the denial of the grievance form.  *See Lewis*, 518 U.S. 353.  He does not allege that Greer's denial of a grievance form resulted in the dismissal of Plaintiff's civil rights complaint.  Further, even if Defendant Greer improperly denied Plaintiff a grievance form and thereby prevented Plaintiff from filing a grievance, Plaintiff's right of access to the courts to petition for redress of his grievance (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievance.  The exhaustion requirement only mandates exhaustion of available administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.[1]

In his third argument, Plaintiff asserts that he has been denied access to the jail law library on numerous unspecified occasions.  The right of access to the courts has never been equated

---

[1]The Sixth Circuit and other circuit courts also have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

with access to legal materials at the prison library.  *Walker*, 771 F.2d at 932; *see also Lewis*, 518

U.S. at 351.  Plaintiff makes no allegation suggesting that his lack of access to the library resulted

in actual injury to his pending or contemplated non-frivolous civil rights or habeas claim.  *Lewis*,

518 U.S. at 353.  Because Plaintiff has not alleged actual injury or that he has suffered any litigation-

related detriment, Plaintiff fails to state a claim for denial of access to the courts.  *Christopher*, 536

U.S. at 416.[2]

### B.        Rights of Others

Plaintiff makes sweeping allegations about inadequate medical and dental treatment

of a large group of inmates at the jail who have dental health or chronic pain problems.  Plaintiff

lacks standing to assert the constitutional rights of other prisoners.  *Newsom v Norris*, 888 F.2d 371,

381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6,

1992).  As a layman, Plaintiff may only represent himself with respect to his individual claims, and

may not act on behalf of other prisoners.  *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973);

*Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918

(E.D. Pa. 1978).  Plaintiff therefore may not raise the claims of other inmates as a basis for relief in

this action.  *See also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003).

---

[2]Moreover, Plaintiff fails to allege that any named Defendant denied him access to the library.  He therefore fails to state a claim for this additional reason.  *See Iqbal*, 129 S. Ct. at 1948 (holding that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### C.       Eighth Amendment

Plaintiff makes only a limited number of claims about his own medical and dental conditions and treatment.  First, he claims that Defendant Greer continued to assign him to cells in which he had to sleep in a boat on the floor, despite knowing that Plaintiff had severe back pain that was aggravated by trying to rise from or get down to the floor.  Second, he alleges that Greer's actions caused him such severe stress that he experienced an intestinal hemorrhage months later.  Third, he claims that he has some teeth that hurt.  While Plaintiff alleges that Defendant Proehl has refused to refer other inmates for dental treatment, he does not specifically claim that Proehl has denied Plaintiff dental treatment.    Fourth, Plaintiff alleges that Proehl refuses to distribute medication for pain, referring prisoners to over-the-counter medications in the jail commissary, where pain relievers are expensive.  Fifth, Plaintiff complains that Defendants Mercer and the unknown Administrator failed to ensure that the jail was at all times sufficiently staffed to provide adequate dental and medical care.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective

component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Court concludes that Plaintiff's first allegation states an Eighth Amendment claim against Defendant Greer for deliberate indifference to Plaintiff's back pain and continuing to assign Plaintiff to a boat on the floor. However, Plaintiff's second claim, concerning his intestinal bleed, falls far short of demonstrating deliberate indifference by Greer. Plaintiff makes no allegation that Greer was aware that Plaintiff had intestinal problems or that Plaintiff was experiencing symptoms of abdominal pain of any sort. He therefore fails to allege that Defendant Greer was

deliberately indifferent to a substantial risk that Plaintiff would experience a serious abdominal bleed.

Plaintiff's third and fourth allegations against Defendant Proehl are wholly insufficient to support an Eighth Amendment claim.  With respect to his claim of inadequate treatment of his dental health, Plaintiff makes a one-sentence allegation:  "I have teeth that hurt and nowhere to turn."  (Am. Compl., Page ID#32.)  Plaintiff makes no allegations about the seriousness of his tooth pain, and he does not allege that he complained to Defendant Proehl about that pain. Nor does Plaintiff allege that pain relievers were insufficient to manage his tooth pain.  As a consequence, Plaintiff's allegation falls far short of demonstrating either that Plaintiff's medical need was sufficiently serious or that Defendant Proehl was deliberately indifferent to that need.

Similarly, Plaintiff's allegation about Proehl's general practice of refusing to distribute pain relievers is insufficient to demonstrate that Plaintiff himself had a sufficiently serious medical need for stronger prescription medication.  Indeed, Plaintiff fails to allege that he complained to Proehl about the inadequacy of his pain medication.  And, while he complains about the price of commissary medications, Plaintiff acknowledges that he was able to and did buy non-prescription pain killers in the commissary.  Plaintiff's allegations about Proehl's practice of denying pain medication fails to demonstrate either prong of the Eighth Amendment standard.  Plaintiff therefore cannot show that he was subjected to cruel and unusual punishment under the Eighth Amendment.

Fifth, Plaintiff alleges that Defendants Mercer and the unknown Newaygo County Administrator failed to ensure that the jail at all times provided adequate medical and dental services for prisoners and they failed to ensure that the library-access system works properly.  Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Mercer and the unknown Newaygo County Administrator engaged in any active unconstitutional behavior that deprived Plaintiff of adequate medical or dental treatment. Accordingly, he fails to state an Eighth Amendment claim against them.

### D.      Race-Based Placement

Plaintiff alleges that Defendant Greer used race as a form of punishment when he placed Plaintiff, a white man, in a cell with three African-Americans for one day. Plaintiff's allegation arguably implicates three constitutional provisions: (1) the Equal Protection Clause; (2) the Eighth Amendment; and (3) the First Amendment. All three claims are frivolous.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental

right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265-66.

Plaintiff provides no factual allegations that would support a conclusion that Plaintiff was treated differently because of his race.  He does not allege that similarly situated African-American prisoners were never placed in a cell with three white prisoners.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).  Moreover, being placed in a cell with persons of another race is simply not a discriminatory act; indeed, consideration of race in cell assignments would itself warrant strict scrutiny under equal protection analysis.  *See City of Cleburne*, 473 U.S. at 440.

Similarly, a prisoner's placement in a cell with persons of another race is neither cruel nor unusual punishment under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  However, the Eighth Amendment is concerned only with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 347 (citation omitted).  Plaintiff's assignment to a cell with prisoners of another race is not punishment, much less unconstitutionally barbarous punishment.

Finally, Plaintiff arguably suggests that he was placed in a cell with prisoners of another race in retaliation for his complaints against Greer, in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See* Thaddeus-X, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Even assuming that Plaintiff could show that he was engaged in protected conduct, Plaintiff cannot demonstrate that his placement in a cell with prisoners of another race amounted to adverse action.  Such a placement would not deter a person of ordinary firmness from engaging in protected conduct.

Plaintiff therefore fails to state a claim against Defendant Greer based on his placement in a cell with persons of another race.

### E.   Other Allegations of Retaliation

Plaintiff also broadly alleges that, when prisoners raise legitimate, grievable issues, they are met with resistance and hostility and are sometimes threatened with being moved to C-

- 16 -

Floor, where the most dangerous prisoners are kept.  He alleges that he has heard unspecified officers comment about the practice.  While Plaintiff's allegations may be interpreted as a sweeping claim of retaliation, the claim fails for multiple reasons.

First, as previously discussed, Plaintiff lacks standing to raise the claims of others, and he makes no allegations that he was personally subjected to retaliation, except to the extent that Greer placed him in a cell with prisoners of another race and made an implied threat to harass Plaintiff if he continued to complain.  As discussed, a prisoner's placement in a cell with persons of another race does not amount to adverse action sufficient to support a retaliation claim. *Thaddeus-X*, 175 F.3d at 394.  Further, Plaintiff's claim that Defendant Greer made a vague threat is not sufficient to demonstrate adverse action.  While a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her right to access the courts, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x  529, 542 (6th Cir. 2003) (threat to change drug test results), Plaintiff does not allege that Greer's threat was either specific or serious.  Moreover, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.  In the absence of a more specific threat, Plaintiff fails to allege the sort of adverse action that would support a retaliation claim against Greer

In addition, Plaintiff makes no allegation that any other Defendant in this action was responsible for retaliating against Plaintiff for filing grievances.  As a result, Plaintiff fails to state a retaliation claim against any Defendant.

**F.      Prisoner Mail Policy**

Plaintiff alleges that the jail has a legal mail policy that does not consider mail from the courts to be legal mail that is required to be opened in the presence of a prisoner.  The Court concludes that Plaintiff has sufficiently alleged a constitutional claim against Defendants Mercer and Greer for the establishment and implementation of the mail policy.  *See Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Proehl and the unknown Newaygo County Administrator will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Plaintiff fails to state a claim against them.  The Court also will dismiss all of Plaintiff's claims against Defendant Mercer, except his challenge to the prisoner mail policy.  Further, the Court will dismiss Plaintiff's claims against Defendant Greer, with the exception of Plaintiff's challenge to the prison mail policy and his claim that Greer violated the Eighth Amendment by continuing to assign Plaintiff to a bunk on the floor, despite being aware of the severe pain Plaintiff suffered getting up from and down to the floor.

An Order consistent with this Opinion will be entered.

Dated:  August 23, 2011                         /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge